UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| RANDY BRETON,<br>    Plaintiff, | :<br>:<br>: |
| v. | :     No. 3:23cv38 (MPS) |
| C/O BERNADEAU, et al.,<br>    Defendants. | :<br>:<br>:<br>: |

**INITIAL REVIEW ORDER**

Plaintiff Randy Breton, a sentenced inmate in the custody of the Department of Correction ("DOC") housed at Cheshire Correctional Center, has filed his complaint in this action *pro se* under 42 U.S.C. § 1983.  Compl., ECF No. 1. He names as defendants Correctional Officer Bernadeau, a property officer at Corrigan Correctional Center, and Attorney Mancini, an Assistant Attorney General. He seeks both damages and injunctive relief.

The Prison Litigation Reform Act requires that federal courts review complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). Upon review, the Court must dismiss the complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

The Court has thoroughly reviewed all factual allegations in the complaint and conducted an initial review of the allegations therein pursuant to 28 U.S.C. §1915A.

    **I.**    **Allegations**

The Court does not include herein all of the allegations from the complaint but summarizes the facts to provide context for this initial review.

In June 2022, Plaintiff was sent to the COVID Unit at MacDougall-Walker Correctional Institution without his memory foam pillow that he requires for his arthritis, neck pain and migraine headaches. Property Officer Bernadeau refused to send it with Plaintiff to the MacDougall COVID Unit even though Plaintiff had informed him of the settlement agreement and court order for his provision of a memory foam pillow for his medical conditions.[1]

When Plaintiff returned to Corrigan, he was not provided with his court-ordered memory foam pillow for two months. After Plaintiff filed a motion for contempt and a motion to reopen the state court judgment, the state superior court issued an order for DOC to replace Plaintiff's memory foam pillow within fifteen days. Plaintiff did not receive his pillow until seven days beyond the court-ordered fifteen day period.[2]

Plaintiff also claims that he is not receiving Tylenol in accordance with the terms set forth under the settlement agreement. He has provided the Cheshire medical unit with a copy of the settlement agreement but has not received any Tylenol.

## II.     Discussion

Section 1983 of Title 42 provides that "[e]very person who, under color of any statute ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress." "The common elements to all § 1983 claims are: '(1) the conduct complained of must have been committed by a person acting under color of state law; and (2) the conduct complained of must have deprived a

---

[1] Plaintiff has attached to his complaint a settlement agreement executed on August 23, 2017. Compl. at 17.

[2] Plaintiff has attached to his complaint the Connecticut superior court order dated December 1, 2022 for DOC to provide Plaintiff with a memory foam pillow within fifteen days. Compl. at 21.

person of rights, privileges, or immunities secured by the Constitution or laws of the United States.'" *Lee v. City of Troy*, 520 F. Supp. 3d 191, 205 (N.D.N.Y. 2021) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)).

A plaintiff seeking monetary damages from a defendant must allege facts that establish the personal involvement of that defendant in the alleged constitutional violation. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that 'personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.'" (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991))). To "hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official without relying on a special test for supervisory liability." *Tangreti v. Bachman*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff asserts Eighth Amendment violations against both Correction Officer Bernadeau and Assistant Attorney General Dennis Mancini, who represented the State in connection with Plaintiff's motions in superior court. Plaintiff also claims that he has been subjected to retaliation in connection with his state court actions.

### A. Eighth Amendment

In order to show a violation of his Eighth Amendment rights to be free from deliberate indifference to his health or safety, Plaintiff must allege (1) that he was incarcerated under "conditions posing a substantial risk of serious harm" and (2) that the prison official putting him in those conditions was deliberately indifferent to his health or safety. *Morgan v. Dzurenda*, 956 F.3d 84, 89 (2d Cir. 2020). In order to meet this second prong, a defendant "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* Plaintiff must allege facts to suggest that a defendant

acted not merely carelessly or negligently, but with a subjectively reckless state of mind akin to criminal recklessness. *Dunbar v. Dep't of Correction*, No. 3:22-CV-627 (JAM), 2023 WL 143164, at *5 (D. Conn. Jan. 10, 2023).

Correction Officer Bernadeau[3]

For purposes of initial review, Plaintiff's allegations sufficiently state an Eighth Amendment claim against Correction Officer Bernadeau for deliberate indifference to his serious need for his memory foam pillow. Accordingly, the Court will permit Plaintiff to proceed on his Eighth Amendment claim against Defendant Bernadeau.

Assistant Attorney General Dennis Mancini

Plaintiff alleges that while "acting as respondent for the defendant[,]" Attorney Mancini violated the Eighth Amendment by "deliberately" taking an additional seven days beyond the court-ordered fifteen days to provide him with the memory foam pillow. Compl. at 10 (¶18). Plaintiff maintains that Attorney Mancini sought to punish him for his court action by providing him with the pillow after the court-ordered deadline. *Id.*

"[A] government attorney is entitled to absolute immunity when functioning as an advocate of the state in a way that is intimately associated with the judicial process." *Mangiafico v. Blumenthal*, 471 F.3d 391, 396 (2d Cir. 2006) (citation omitted). To determine whether a state official is entitled to absolute immunity, courts look at "the nature of the function performed, not the identity of the actor who performed it." *Forrester v. White,* 484 U.S. 219, 229 (1988). In *Imbler v. Pachtman,* 424 U.S. 409 (1976), the Supreme Court held that state prosecutors are

---

[3] Plaintiff alleges there is no grievance exhaustion requirement for "deliberate non-compliance of court orders." Compl. at ¶ 24. But he also references his prior exhaustion of his claims in this action. *Id.* Under these circumstances and because exhaustion is an affirmative defense, this initial review will not consider whether his section 1983 claim against Correction Officer Bernadeau should be dismissed for failure to comply with the Prison Litigation Reform Act's exhaustion requirement.

afforded absolute immunity for all actions arising from conduct "intimately associated with the judicial phase of the criminal process." *Id.* at 430. The Second Circuit has extended the absolute immunity afforded to prosecutors to state assistant attorneys general defending civil actions against the state and state employees. *See Contreras v. Perimenis*, 562 F. App'x 50, 51 (2d Cir. 2014) (affirming that Assistant Attorney General representing the Connecticut Department of Children and Families "was entitled to absolute immunity because he was sued in his capacity as a government advocate prosecuting child welfare cases"); *Bogle-Assegai v. Comm'n on Human Rights & Opportunities*, 331 F. App'x 70, 71 (2d Cir. 2009) (upholding district court's dismissal of claims against assistant attorney general "because any misstatements he is alleged to have made were made in the course of defending the state against civil liability.") (citation omitted). Here, Plaintiff seeks damages against Attorney Mancini for his conduct in connection with his representation of the DOC in Plaintiff's civil action related to his need for the memory foam pillow. Accordingly, Defendant Mancini is entitled to absolute immunity from damages under section 1983 since his conduct complained of was undertaken on behalf of the DOC during the course of and in connection with Plaintiff's litigation against the DOC.

In addition, Plaintiff's conclusory allegation that Defendant Mancini "deliberately" took seven additional days to provide the memory foam pillow in order to punish Plaintiff is not sufficient to support an Eighth Amendment deliberate indifference claim. Although the Court must "afford a *pro se* litigant a certain degree of latitude in the sufficiency of his factual allegations, a liberal interpretation of a *pro se* civil rights complaint may not supply essential elements of the claim that were not initially pled." *Darby v. Greenman*, 14 F.4th 124, 130 (2d Cir. 2021) (citation and quotation marks omitted). Plaintiff has not alleged specific facts to reflect that Defendant Mancini delayed Plaintiff's receipt of his memory foam pillow with

conscious disregard of his serious medical needs. The Court is "not free to speculate about unpleaded facts that might be favorable to the plaintiff." *Id.* at n.6.

Thus, the Eighth Amendment claim against Attorney Mancini must be dismissed as not plausible.

<u>Failure to Provide Tylenol</u>

Plaintiff appears to assert an Eighth Amendment claim of deliberate indifference based on the medical unit's failure to provide him with Tylenol for his pain despite the provisions of the settlement agreement. Plaintiff has not alleged the involvement of any named defendant in this alleged deprivation. Accordingly, Plaintiff has not alleged a plausible Eighth Amendment claim based on his Tylenol deprivation in this matter.

**B.     First Amendment Retaliation**

Plaintiff alleges he was the subject of retaliation because he served as a witness in his prior state court proceeding against DOC employees. He also alleges that Defendant Mancini acted to punish him for his state court action by providing him the memory foam pillow seven days after the court-ordered fifteen days.[4]

To plead a First Amendment retaliation claim, an inmate must plausibly allege "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against [him or her], and (3) that there was a causal connection between the protected speech and the adverse action." *Brandon v. Kinter*, 938 F.3d 21, 40 (2d Cir. 2019) (citation omitted). The Second Circuit has "instructed district courts to approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a prisoner by a

---

[4] As previously discussed, Attorney Mancini is absolutely immune from damages for his conduct undertaken on behalf of the DOC in connection with Plaintiff's litigation. Plaintiff has not alleged facts to suggest that Attorney Mancini was not acting within his role as the attorney for the DOC in connection with this claim.

6

prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation omitted).

Plaintiff has satisfied the first element because "[v]oluntarily appearing as a witness in a public proceeding or a lawsuit is a kind of speech that is protected by the First Amendment." *Kaluczky v. City of White Plains*, 57 F.3d 202, 210 (2d Cir. 1995). For purposes of initial review only, the Court considers Plaintiff's memory foam pillow deprivation to be sufficiently adverse so as to "deter a similarly situated individual of ordinary firmness from exercising ... [his] constitutional rights." *Gill v. Pidlypchack*, 389 F.3d 379, 381 (2d Cir. 2004) (citation omitted).

As to the third requirement, Plaintiff must show that "the protected conduct was a substantial or motivating factor" for a defendant's action. *Holland v. Goord,* 758 F.3d 215, 225 (2d Cir. 2014) (citation and internal quotation marks omitted). The Second Circuit has required that prisoner retaliation claims "be supported by specific and detailed factual allegations, not stated in wholly conclusory terms." *Dolan*, 794 F.3d at 295. Here, Plaintiff has alleged his claim of retaliatory conduct in wholly conclusory terms. Accordingly, his First Amendment retaliation claims against Defendants must be dismissed as not plausible.

## C. Official Capacity Claims

To the extent Plaintiff seeks monetary damages against Defendants, who are state employees, in their official capacities, such claims are barred by the Eleventh Amendment. *See, e.g., Kentucky v. Graham*, 473 U.S. 159, 169 (1985).

Plaintiff may proceed against Defendants in their official capacities only to the extent that he seeks prospective relief for an ongoing violation of federal law. *See Ex parte Young*, 209 U.S. 123, 155-56 (1908); *see also In re Deposit Ins. Agency*, 482 F.3d 612, 617 (2d Cir. 2007) ("[A]

plaintiff may sue a state official acting in his official capacity—notwithstanding the Eleventh Amendment—for 'prospective injunctive relief' from violations of federal law."). When a party sues a state official in his or her official, "a federal court's remedial power, consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not include a retroactive award which requires the payment of funds from the state treasury." *Edelman v. Jordan*, 415 U.S. 651, 677 (1974).

Plaintiff seeks a court order to prevent Defendants from depriving him of his memory foam pillow or Tylenol. Plaintiff has stated a plausible Eighth Amendment claim against Officer Bernadeau, but he has not stated a plausible Eighth Amendment claim based on any Defendant's failure to provide him with Tylenol. Nor has he alleged facts to suggest that the Eighth Amendment violation based on the memory foam pillow deprivation is ongoing so as to satisfy the *Ex parte Young* exception to Eleventh Amendment immunity. Accordingly, the Court must dismiss Plaintiff's requests for official capacity relief.

### D.     State Law Claim: Breach of Contract

This court can exercise supplemental jurisdiction over a state law claim if:
(1) there is a claim arising under the federal constitution or federal laws; (2) the relationship between the federal claim and the state claim permits the conclusion that the entire action comprises but one constitutional case; (3) the federal claim has substance sufficient to confer subject matter jurisdiction on the court; and (4) the state and federal claims derive from a common nucleus of operative fact. *Miller v. Lovett*, 879 F.2d 1066, 1071 (2d Cir. 1989), abrogated on other grounds, *Graham v. Connor*, 490 U.S. 386 (1989); *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Under 28 U.S.C. § 1367(c), a "district court may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—(1) the claim raises a

novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

To the extent Plaintiff asserts a breach of contract claim based on breach of his state court settlement agreement, the Court will decline to exercise jurisdiction. The Court declines to exercise jurisdiction over this claim under section 1367(c)(2) because the state law issues concerning the settlement agreement would substantially predominate over the federal Eighth Amendment claim, which is limited to Defendant Bernadeau's alleged deliberate indifference to Plaintiff's need for a memory foam pillow. *See United Mine Workers of America v. Gibbs,* 383 U.S. 715, 726 (1966) ("[I]f it appears the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals."). The Plaintiff may assert his breach of contract claim in a separate action in state court.

**III.   Orders**

For the foregoing reasons, the court enters the following orders:

The case shall proceed on Plaintiff's individual capacity claims for damages against Correction Officer Bernadeau for Eighth Amendment violation.

Under 28 U.S.C. § 1367(c)(2), the Court declines to exercise jurisdiction over any state law contract claim based on breach of the settlement agreement and dismisses this state law contract claim without prejudice. All other claims are DISMISSED. Defendant Mancini is DISMISSED from this action.

Plaintiff has two options as to how to proceed in response to this Initial Review Order:

(1) If he wishes to proceed on his Eighth Amendment claim against Correction Officer Bernadeau, Plaintiff may do so without further delay. If Plaintiff selects this option, he shall file a notice on the docket on or before **May 10, 2023**, informing the Court that he elects to proceed with service as to the claims set forth in this paragraph. The Court will then begin the effort to serve process on Defendants in their individual capacities.

(2) Alternatively, if Plaintiff wishes to attempt to replead any of the claims asserted in his complaint that have been dismissed, in order to attempt to state a viable claim, he may file an amended complaint by **May 10, 2023**. An Amended Complaint, if filed, will completely replace the Complaint, and the Court will not consider any allegations made in the original Complaint in evaluating any Amended Complaint. The Court will review any Amended Complaint after filing to determine whether it may proceed to service of process on any defendants named therein. If Plaintiff elects to file an Amended Complaint, the original complaint this IRO addresses will **not** proceed to service of process on any defendant.

If the Court receives no response from Plaintiff by **May 10, 2023**, the Court will presume that Plaintiff wishes to proceed on the complaint as to the claims permitted to go forward in this Initial Review Order, and Plaintiff will have to show good cause if he seeks to amend the complaint in any manner in the future.

**Changes of Address.** If Plaintiff changes his address at any time during the litigation of this case, Local Rule 83.1(c) 2 provides that he **MUST** notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If Plaintiff has more than

one pending case, he should indicate all the case numbers in the notification of change of address.

Plaintiff should also notify Defendants or counsel for Defendants of his new address.

_____/s/_____
Michael P. Shea
United States District Judge

**SO ORDERED** this 10th day of April 2023, at Hartford, Connecticut.